# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DOROTHY A. MOORE-FOTSO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12-cv-10419 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| BOARD OF EDUCATION | ) | |
| OF THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Dorothy Moore-Fotso's motion for reconsideration [109; 118] of this Court's decision [107] to grant Defendant's motion for summary judgment [99]. For the reasons set forth below, Plaintiff's motion for reconsideration [109; 118] is denied.[1]

**I.    Background**

The facts of this case are set out more extensively in the Court's Memorandum Opinion and Order [107] granting Defendant's motion for summary judgment [99]. See also *Moore-Fotso v. Bd. of Educ. of the City of Chi.*, 2016 WL 5476235, at *2–7 (N.D. Ill. Sept. 29, 2016).

As a brief recap, Plaintiff suffers from multiple chronic medical conditions that impact her ability to stand or sit for extended periods of time, use stairs, or be confined to rooms with carpeting or dust. Plaintiff also worked as a teacher at various Chicago schools between 2005 and 2012, and requested that Defendant accommodate her disabilities pursuant to the Americans with Disabilities Act ("ADA"). Most of those accommodations were granted. In particular, Plaintiff was given dictation software, a printer, a scanner, two types of projectors, a HP compact business notebook, an ergonomic roller mouse and mouse station, toner cartridges, whiteboards,

---

[1] In accordance with Federal Rule of Appellate Procedure 4(a)(4)(A)(iv)–(vi), the 30-day time period for Plaintiff to file an appeal runs from the date of this order.

a task chair, air purifiers with filters in each of her classrooms, filing cabinets, and access to the school's elevator. She was also granted leave under the Family and Medical Leave Act to be absent up to four days each month. One requested accommodation that Plaintiff did not receive, however, was the ability to teach from a single classroom on the first floor of her school.

Plaintiff requested the one-room accommodation at the start of the 2009-2010 school year. The prior year, Plaintiff had been chronically absent and tardy, and received repeated warnings about her attendance. Her attendance problems (and disciplinary actions for those problems) continued into the 2009-2010 school year. Moreover, Plaintiff fared poorly during her annual performance review that year. She arrived late to class, failed to provide a lesson plan or establish a positive learning environment for students, and was involved in a confrontation with another teacher. Similar observations were noted when another school administrator evaluated her classroom performance. At the end of that school year, Plaintiff received an "unsatisfactory" rating, and pursuant to a city-wide policy governing teacher layoffs, Plaintiff was terminated.

For the next school year, Plaintiff was placed in Chicago's Reassigned Teacher Pool. She was unable to secure permanent employment during her ten-month RTP assignment, and was then assigned to work as a Cadre substitute—teachers who move from school to school to cover temporary vacancies. Between September and November 2011, Plaintiff worked briefly at two schools. She renewed her request to work from a single classroom, but this accommodation was not provided. Furthermore, one of these schools hired two math teachers during the time that Plaintiff worked as a Cadre substitute, but Plaintiff was not hired for either position. These positions also required the teacher to work from multiple classrooms. Plaintiff's Cadre status ended in August 2012, and she has since worked as a day-to-day substitute teacher.

Plaintiff claims that Defendant violated the ADA by failing to provide reasonable accommodations for her disability, discriminating against her because of her disability, and retaliating against her because she had filed charges with the Equal Employment Opportunity Commission ("EEOC"). Defendant moved for summary judgment, which the Court granted [107]. First, the Court found that Plaintiff was not a "qualified individual with a disability" because her excessive absences and tardiness meant that she could not perform the "essential functions" of her job. As a result, her failure to accommodate and discrimination claims could not survive. Second, even if Plaintiff was a qualified individual with a disability, a reasonable jury could not find that Defendant failed to engage in an interactive process with Plaintiff over her accommodations, that a single classroom was a reasonable accommodation when she became a Cadre substitute, or that the ADA required her to be hired as a full-time math teacher. Third, Plaintiff had failed to present a triable issue of fact that any of seven adverse employment actions that she experienced was because of her disability. Finally, Plaintiff could not show that the five employment actions allegedly taken in retaliation were adverse or that there was a causal connection between the filing of the EEOC charges and the employment action. Accordingly, the Court granted the motion and entered judgment in Defendant's favor. [See 107.]

Following the entry of judgment, Plaintiff filed several motions [109; 118], which the Court construed as requesting reconsideration of the Court's decision [see 114, 120].[2]

## II.  Legal Standard

"A motion to alter or amend a judgment is only proper when 'the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence

---

[2] With the consent of Plaintiff, the Court permitted recruited counsel who had represented Plaintiff through the summary judgment proceedings to withdraw [see 120]. The motion for reconsideration therefore was filed by Plaintiff representing herself, and the Court will liberally construe the motion as it must will all *pro se* filings.

in the record that clearly establishes a manifest error of law or fact.'" *Burritt v. Ditlefsen*, 807 F.3d 239, 252–53 (7th Cir. 2015) (quoting *Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). A motion under Federal Rule of Civil Procedure Rule 59(e) should be used only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990). Rule 59(e) motions are "not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier." *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (internal quotation marks and citation omitted).

## III. Analysis

In seeking reconsideration, Plaintiff does not present newly discovered evidence or claim that the Court disregarded or failed to recognize controlling precedent. Instead, she advances one new factual claim that she asserts should have been considered by the Court, and several other arguments that largely mirror ones that she advanced in opposition to summary judgment. The Court starts with Plaintiff's new factual claim.

Plaintiff contends that her attorney erroneously failed to deny Defendant's Local Rule 56.1 Statement of Fact 21 [92, ¶ 21], which concerns her May 13, 2010 annual performance review conducted by George Henry Corliss High School Principal Anthony Spivey. [See 109-1, at 2.] Paragraph 21 states:

4

> During the class period for which Principal Spivey evaluated plaintiff, she arrived late to teach her class. When plaintiff arrived she was not engaging in instruction. She sat, doing nothing, for a while. This did not demonstrate good teaching practice. The principal saw "no planning that took place. [He] thought she was not prepared. Kids were not engaged. There was very little attempt to support the students while she was in the classroom. There was [a] confrontation between her and the other teacher that disrupted the classroom." The co-teacher of the class plaintiff observed was D.P.

[See 109-1, at 2 (internal citations omitted).] Plaintiff argues that she "would have had to experience a lobotomy to disrespect authority by not participating during an observation, sitting down, then arguing with the classroom teacher on record after [she] arrived late to class." [109, at 3.] Moreover, Plaintiff asserts that she brought the error to her attorney's attention in January 2016, but it was never corrected.

Plaintiff then offers a *highly* detailed account of the events of May 13, 2010. For example, Plaintiff recounts that (1) Corliss used the Carnegie Learning Math Curriculum between 2008 and 2010, and Plaintiff had provided prepared lesson plans to the Corliss math staff in September 2008; (2) Plaintiff's "key pod" would not open the school's front door on May 13, so she waited for the assistant principal to open the door; (3) "Plaintiff arrived late to the classroom" because she had to pick up her math curriculum materials from the planning room; (4) Plaintiff's co-teacher wrote a math problem on the white board and told Plaintiff that students were familiar with the "rule of disability," but did not review that rule with students; (5) Plaintiff then discussed this rule with individual students; (6) one student asked Plaintiff if the number one was a prime number, and in response, Plaintiff asked him to define the prime and composite numbers while "the classroom teacher yelled at the Plaintiff about whether the number one is a prime number"; and (7) Principal Spivey's observation of her classroom performance was "false" because it "included information not related to the Plaintiff's instruction of Carnegie's

5

Learning Math topic on how to introduce, identify, and construct geometric concepts that describe the circle." [109-1, at 3–5.]

Plaintiff's description of the events of March 13, 2010, does not affect this Court's decision to grant summary judgment for several reasons. As Plaintiff implicitly concedes, she did not present any of these facts to the Court prior to summary judgment. [109-1, at 2.] A motion for reconsideration is not an opportunity to "present evidence that was available earlier" or make arguments "that could and should have been made before the district court rendered a judgment." *Miller*, 683 F.3d at 813. But it would not have mattered if she had timely submitted this account, even assuming it could be rewritten to comply with Local Rule 56.1.[3] Plaintiff's dispute over the substance of Principal Spivey's classroom observations—which was only one of the factors that contributed to Plaintiff's "unsatisfactory" rating—misses the forest for the trees.[4] None of these "disputed" facts suggests that Defendant failed to accommodate her disability, engaged in disability discrimination, or retaliated against her against her disability. Said differently, the specific facts that Plaintiff now wishes she had disputed do not refute the conclusions that (1) she had significant attendance problems that prevented her from carrying out the essential functions of her job; (2) Defendant provided her with multiple accommodations; (3)

---

[3] The Court previously concluded that the parties' statements of fact did not comply with Local Rule 56.1 because they were argumentative, evasive, focused on immaterial facts, and combined lengthy statements into a single paragraph. [107, at 1–4.] It also noted that denials of statements of fact should be "concise" and contain "specific references to the affidavits, parts of the record, and other supporting materials" to substantiate the disagreement with opposing party's statement of fact. *Id.* at 2; L.R. 56.1(b). Plaintiff's reconsideration motion continues to fall short of those requirements. Her "denial" of Paragraph 21 spans more than 50 sentences, yet cites nothing from the record to support her account. The Court would have disregarded a response like this had she submitted it at summary judgment.

[4] Principal Spivey's evaluation states that Plaintiff's "weaknesses" were (1) "Applying contemporary principles of learning and teaching methodology consistently"; (2) "Actively engages in school-wide professional development"; (3) "Sets standards for quality student work"; (4) "Exhibiting appropriate classroom management skills"; (5) "Clearly produces intended or desirable assessment results"; (6) "Does not maintain her attendance/punctuality in accordance with our local unit criteria"; and (7) "Consistently carry out daily routines and administrative request." [80, at Ex. E, Attach. 13]

there is no evidence that Principal Spivey's classroom evaluation was motivated by discriminatory animus; and (4) her unsatisfactory evaluation and termination predate the filing of her November 2010 EEOC charge and cannot form the basis of a retaliation claim. [107, at 39]; see also *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 603 (7th Cir. 2011) (explaining that "potentially inaccurate evaluations [do not] necessarily denote *disability* discrimination"). Indeed, most of the details that Plaintiff offers *corroborate* the main points of Principal Spivey's account: she was late to class and was involved in at least two disputes with her co-teacher during the evaluation, one of which involved yelling. Plaintiff fails to explain how her contention that she was following a lesson plan on March 13 means there is a triable issue of fact for any of her ADA claims. Thus, her belated denial of Paragraph 21 does not merit a different outcome for summary judgment.

Over the course of Plaintiff's reconsideration-related filings [109; 118; 130], Plaintiff also raises several other loosely organized arguments.[5] She claims that Washington Principal Florence Gonzalez falsely testified at her deposition about the demands of special education teachers and certification requirements for general education, special education, and mathematics. [109, at 5–6.] Neither point has anything to do with the reasons underlying the Court's summary judgment decision. Plaintiff further argues that her equipment

---

[5] Plaintiff's single spaced, 22-page reply does not respond to any of Defendant's arguments regarding why reconsideration is inappropriate. [See 130-1.] While it mostly rehashes arguments that Plaintiff raised before, Plaintiff also—for the first time—provides a quote from the unnamed Math Department Chair at George Washington High School (*id.* at 6–7) about how Plaintiff should not have been provided one classroom just because of her disability. While this quote does nothing to displace the Court's conclusion that Plaintiff's failure-to-rehire claim cannot be pursued as a viable disability discrimination theory because it was omitted from her EEOC charge [107, at 35–36], Plaintiff offers no explanation as to why she did not include this quote in her original summary judgment response brief. Nor does she explain whether this person was involved the hiring decisions at Washington, ever communicated this sentiment to Washington's Principal, had the power to decide whether she received a one-room accommodation, or even when this quote was made. See *Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005) ("Derogatory statements made by someone who is not involved in making the employment decision at issue are not evidence that the decision was discriminatory.").

7

accommodations were not enough, the lack of a one-room accommodation worsened her attendance problems, Defendant knew about her disabilities, she had multiple relevant certifications in math and special education that made it "egregious" for Defendant not have let her teach math, other math teachers at Corliss taught from a single classroom, Principal Spivey evaluated her according to the wrong standard, she did not serve in RTP for the full ten month term, and Principal Gonzales knew (or should have known) that Plaintiff was certified in math. [See 109-1, at 6–9; 118-1; 130-1.]

The Court considered and rejected these same arguments as insufficient to avoid summary judgment for Defendant. It also provided *multiple* reasons for doing so in its 43-page opinion. [See 107.] Plaintiff's briefs do not discuss any of those reasons, identify any record evidence demonstrating a material factual dispute that the Court ignored, cite any controlling precedent that the Court overlooked or misconstrued, or explain how exactly the Court erred in any of its conclusions regarding Plaintiff's three ADA claims. "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). And Plaintiff's mere repetition of her contentions that she deserved a one-room accommodation and to be hired as a full-time math teacher fails to persuade the Court that reconsideration under Rule 59(e) is appropriate.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for reconsideration [109; 118] is denied.

Dated: May 8, 2017

_____
Robert M. Dow, Jr.
United States District Judge

8